NANCY ELIZABETH BURGER AND N.C. FARM BUREAU MUTUAL INSURANCE COMPANY, PLAINTIFFS v. JOHN DOE, RICHARD SKEENS AND ALICE ANN SKEENS, DEFENDANTS

No. COA00-259

(Filed 1 May 2001)

**Insurance— uninsured motorist—arbitration and settlement by carrier—binding on tortfeasors—admissible in action against tortfeasors**

In an action brought by an automobile accident victim and her uninsured motorist carrier after defendant tortfeasors' liability carrier denied coverage, the victim demanded arbitration with her uninsured motorist carrier, and her carrier paid the victim the $19,000 awarded to her by the arbitration panel, the trial court erred by refusing to give plaintiffs' requested instruction that if the jury found that the victim was injured by defendants' negligence and that the arbitration settlement was entered in good faith and was fair and reasonable, the amount of damages would be $19,000. The uninsured motorist carrier could bind a tortfeasor for the amount the carrier paid the injured plaintiff pursuant to arbitration. Furthermore, it is implicit that plaintiffs on remand may present evidence concerning the arbitration proceeding since the jury may evaluate the reasonableness and good faith of the arbitration settlement.

BURGER v. DOE

[143 N.C. App. 328 (2001)]

Appeal by plaintiffs from judgment entered 15 September 1999 by Judge Steven A. Balog in Alamance County Superior Court. Heard in the Court of Appeals 22 January 2001.

> *Pinto Coates Kyre & Brown, PLLC, by Paul D. Coates and John I. Malone, Jr., for plaintiff-appellant North Carolina Farm Bureau Mutual Insurance Company.*

> *Teague, Rotenstreich & Stanaland, L.L.P., by Kenneth B. Rotenstreich and Paul A. Daniels, for defendant-appellees.*

EAGLES, Chief Judge.

This case presents questions of whether an uninsured motorist coverage carrier may bind a tort-feasor for the amount the uninsured carrier paid the victim pursuant to an arbitration proceeding.

Plaintiff, Nancy Burger, was involved in an automobile accident with a car owned by defendant Alice Ann Skeens. Defendants claimed that they did not know who was driving the car at the time of the accident. Based on this assertion, the defendants' insurance carrier Allstate denied coverage. Plaintiff Burger had an automobile insurance policy with plaintiff Farm Bureau which included uninsured motorist coverage.

Allstate's denial of coverage allowed the defendants' automobile to be considered an "uninsured motor vehicle" under the Farm Bureau policy. After the denial of coverage, Burger demanded arbitration of her claim under the Farm Bureau policy. After the demand but prior to the hearing, plaintiffs filed a complaint against the defendants to protect the plaintiffs' rights under the statute of limitations.

On 13 October 1998, Farm Bureau and Burger arbitrated her uninsured motorist claim before an arbitration panel. The panel awarded Burger $19,000 for her personal injuries caused by the accident. The trial court later confirmed the award. The plaintiffs gave the defendants timely notice of the arbitration hearing. Defendants' counsel attended but did not participate in the arbitration proceeding.

At trial of this matter, the parties agreed to bifurcate the proceedings. In the first phase, the jury concluded that, contrary to his assertion, defendant Richard Skeens was operating the vehicle in question at the time of the collision. A second portion of the trial was held on 9 August 1999 to determine proximate cause and damages. On

the morning of trial, the court made two rulings concerning the admissibility of the arbitration. The court determined that the plaintiffs could present evidence that Farm Bureau had paid Burger the $19,000 arbitration award. However, the trial court also ruled that Farm Bureau could not introduce any evidence as to the arbitration itself and the methods by which the arbitrators arrived at their award.

At the close of plaintiffs' case, the defendants declined to put on evidence and the trial court denied plaintiffs' motion for a directed verdict. The trial court also denied the plaintiffs' request to submit issues from *Nationwide Mutual Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E.2d 597 (1977), regarding the amount of damages that plaintiffs were entitled to recover. Specifically, plaintiffs asked the trial court to instruct the jury in the following manner.

> Issues in this case would be was Nancy Elizabeth Burger injured and damaged by the negligence of the defendants Alice Ann Skeens and Richard Skeens? Was the plaintiff North Carolina Farm Bureau's settlement with Nancy Burger made in good faith? . . . Was the plaintiff North Carolina Farm Bureau's settlement with Nancy Burger fair and reasonable? . . . What amount is the plaintiff North Carolina Farm Bureau entitled to recover? And I believe that if the jury would come back with the Issues 1 and 2 being yes, and answer the third issue yes, the case would be ended and the trial judge would enter a judgment in the amount of $19,000 in favor of the plaintiff, North Carolina Farm Bureau. Only if they answer the third issue no, should the trial judge instruct the jury that they should proceed to answer the fourth issue.

The court denied the plaintiffs' request and instructed the jury, "[y]ou're not required to accept the amount of damages suggested by the parties or their attorneys or the amount paid by Farm Bureau to Nancy Burger." After deliberation, the jury awarded Burger $7,000. The trial court then denied plaintiffs' motions for directed verdict and new trial. Plaintiffs appeal.

The central issues of this appeal are (1) whether the trial court should have allowed the jury to decide whether the defendants were bound by results of the arbitration proceeding and (2) whether evidence of the arbitration proceeding was admissible. We hold that under *Chantos*, the answer to both questions must be yes.

**BURGER v. DOE**

[143 N.C. App. 328 (2001)]

Like the present case, *Chantos* arose out of an automobile accident. *Id.* at 433, 238 S.E.2d at 600. The plaintiff insurance company provided coverage to an automobile owned by a third party. *Id.* The third party allowed the defendant to drive the vehicle. *Id.* While operating the automobile, defendant negligently caused a collision with the victim. *Id.* The victim suffered serious personal injuries and substantial property damage. *Id.* Plaintiff settled the claim and then brought an action against the defendant for indemnity. *Id.* The Supreme Court agreed that the insurance company had a right to indemnity and held that the defendant could be bound by the amount of settlement. *Id.* at 442, 238 S.E.2d at 605.

In reaching this holding, the Supreme Court noted that the Financial Responsibility Act requires mandatory compliance with its terms. *Id.* at 440, 238 S.E.2d at 604. The Act's provisions are written into every policy and the Act's terms will prevail over a conflicting contractual term. *Id.* at 441, 238 S.E.2d at 604. The purpose is to protect innocent victims injured by financially irresponsible motorists. *Id.* at 440, 238 S.E.2d at 604. The victims' rights are purely statutory in nature as opposed to a voluntary contract. *Id.* Therefore, while the *Chantos* defendant was not an "insured" under the contract, the Supreme Court held that the Financial Responsibility Act made him an "insured" for the public's protection. *Id.* at 441, 238 S.E.2d at 604. The insurance company's liability did not arise out of its own conduct but rather out of the Financial Responsibility Act and the defendant's negligence. *Id.*

The Supreme Court then went on to analogize this situation to the public policy that imposes "liability upon an employer for the tortious conduct of his employee." *Id.* at 441, 238 S.E.2d at 604. The Supreme Court then stated:

> It has long been established that where liability has been imposed upon an employer because of the negligence of his employee and he incurs such liability solely under the doctrine of *respondeat superior*, the employer, having discharged the liability, may recover full indemnity from the employee. This rule of indemnity has also been applied to joint tort-feasors. The general rule of common law is that there is no right of indemnity between joint tort-feasors. This rule is modified by the doctrine that a party secondarily liable is entitled to indemnity from the party primarily liable even when both parties are denominated joint tort-feasors. For example, when the active negligence of one tort-feasor and the passive negligence of another combine to proxi-

mately cause injury to a third party, the passively negligent tort-feasor who is compelled to pay damages to the injured party is entitled to indemnity from the actively negligent tort-feasor.

*Id.* at 441-42, 238 S.E.2d at 604 (citations omitted). The Supreme Court reasoned that it was unfair for the *Chantos* defendant to gratuitously reap the benefits of the insurance policy. According to the Court, the General Assembly did not intend to enact a statutory scheme that allowed a wrongdoer to benefit from an insurance policy without being liable to indemnify the insurer who became liable solely by virtue of the Financial Responsibility Act. *Id.* at 442, 238 S.E.2d at 605. Therefore, the insurance company in *Chantos* had a right to complete indemnification.

On remand, the *Chantos* Court ordered that the trial court had to submit the following issues to the jury: "(1) Was [the victim] injured and damaged by the negligence of the defendant?; (2) Was plaintiff's settlement with [the victim] made in good faith?; (3) Was plaintiff's settlement with [the victim] fair and reasonable?; (4) What amount is plaintiff entitled to recover?" *Id.* at 446, 238 S.E.2d at 607. The Court noted that if the jury answered the first three questions "yes" then the trial court should enter judgment in the amount of the settlement. *Id.* at 447, 238 S.E.2d at 607.

We now hold that the relief sought by Farm Bureau here is the same relief sought by the plaintiff in *Chantos*. Once Allstate denied coverage, the defendants became uninsured motorists. The Financial Responsibility Act requires insurers to provide uninsured motorist coverage. G.S. § 20-279.21(b)(3) (1999). Therefore, plaintiff Burger obtained her right to recover as a matter of law. Like the defendant in *Chantos*, the Financial Responsibility Act makes the defendants here "insureds" under the policy for the public's protection. Accordingly, Farm Bureau may seek recovery from the defendants and defendants may be bound by the results of the arbitration proceeding.

Like *Chantos*, on remand the trial court should utilize the following issues:

1. Was the Plaintiff Nancy Elizabeth Burger, injured or damaged by the negligence of the Defendants Richard Skeens and Alice Ann Skeens?

2. Was the Plaintiffs' arbitration settlement entered in good faith?

3. Was the amount of plaintiffs' arbitration settlement fair and reasonable?

4. What amount are the plaintiffs entitled to recover?

If the jury answers the first three questions "yes," then the case is over and the trial court should enter judgment for $19,000 for Farm Bureau.

We note that much of the parties' focus on this appeal has been on the arbitration proceeding. It is accurate to state that the arbitration proceeding itself was solely a product of Burger's contract with Farm Bureau and not required by the Financial Responsibility Act. However, in both *Chantos* and the present case, the insurance company's liability arose out of the Financial Responsibility Act. Unlike the present case, the *Chantos* insurance company settled with the victim of the tort-feasor's misfeasance instead of sending the case to arbitration. The *Chantos* plaintiff simply used a different method of resolving its own liability than Farm Bureau did here. If anything, the fact that there was an arbitration proceeding here adds more credence to the settlement between the insurance company and the victim. However, there is no difference between the ultimate effect of an arbitration settlement and a settlement reached through means other than arbitration for purposes of this case.

The holding urged by the defendants would have led to untoward results. If we refused to bind the defendants, the uninsured motorist insurance carrier would be left to pay off the entire claim when it became liable solely by virtue of the Financial Responsibility Act. It would in effect have no fair method of recovery. Further, the defendants' position would encourage the tort-feasor and his potential carrier to deny coverage and force the uninsured carrier to go to arbitration. This would give the tort-feasor's carrier and the tort-feasor an opportunity to go through a free discovery process while allowing the uninsured carrier to suffer all the costs. We do not believe that the General Assembly intended such a result.

Since we have held that the jury may evaluate the reasonableness and good faith of the arbitration settlement, it is implicit that the plaintiffs may present evidence concerning the arbitration proceeding itself. On remand, the trial court should allow them to do so.

Based on the foregoing, we conclude that the trial court erred in refusing to give the plaintiffs' requested instructions. Accordingly we

reverse and remand for a new trial. Since we have ordered a new trial, we decline to address the remaining assignments of error.

Reversed and remanded for a new trial.

Judges HUDSON and SMITH concur.